IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE

| | |
|---|---|
| XP SERVICES, INC., RODNEY ALLISON, THE RODNEY ALLISON 2019 IRREVOCABLE TRUST, <br><br> Plaintiffs, <br><br> vs. <br><br> JOHN PHILLIP HALL II, TRICION, INC., <br><br> Defendants. | Civil Action No. 3:26-cv-00072-KAC-DCP |

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF PARTIAL MOTION TO DISMISS DEFENDANT HALL'S FIRST AMENDED COUNTERCLAIM**

Plaintiffs XP Services, Inc. ("XP Services"), Rodney Allison ("Allison"), and The Rodney Allison 2019 Irrevocable Trust ("Allison Trust") respectfully move this Court to dismiss Counts III, IV, V, VI, and VII of Defendant John Phillip Hall II's First Amended Counterclaim pursuant to Federal Rule of Civil Procedure 12(b)(1) and (6).[1]

Counts IV of Hall's Counterclaim, breach of fiduciary duty, belongs to XP Services, not Hall. Hall does not have standing to bring this claim and it should be dismissed under Fed. R. Civ. P. 12(b)(1).

Counts III-VII do not satisfy federal pleading standards for numerous reasons. Hall, for example, attempts to name numerous individuals in a conspiracy who are not parties to the case. His tort claims are simply repackaged breach of contract claims, with no duty independent of the

---

[1] This partial Motion to Dismiss tolls Plaintiffs' deadline to answer the entire counterclaim. *Banerjee v. Univ. of Tennessee*, No. 3:17-CV-526, 2018 WL 10195668, at *2 (E.D. Tenn. Oct. 9, 2018). Plaintiffs nonetheless are concurrently filing an Answer to the Counterclaim.

contract identified. He does not plausibly plead the factual basis establishing these claims. At bottom, Hall's claims are based on the Stock Purchase Agreement and his request for a declaration that he owns XP Services because of the SPA and should therefore be entitled to view its business records. The other claims are not cognizable and should be dismissed.

**BACKGROUND**

This is a dispute over ownership and control of XP Services, a Tennessee-based defense-aviation company. (*See generally* First Am. Compl.*,* Doc. 60). Plaintiffs Rodney Allison and The Rodney Allison 2019 Irrevocable Trust are the sole shareholders of XP Services. (*Id.*). Plaintiffs bring this suit because Defendants have falsely claimed ownership of XP Services despite Hall's repeated failure to close on the parties' Stock Purchase Agreement and to pay the agreed Purchase Price. (*Id.* at ¶¶ 1–9).

Under a Stock Purchase Agreement executed on February 13, 2025 ("SPA"), Hall agreed to purchase all outstanding shares of XP Services. (Doc. 60-1). After months of delay and repeated failures to close, the parties executed an amendment to the SPA (the "First Amendment") on September 6, 2025. (Doc. 60-2). The First Amendment imposed a hard deadline of September 29, 2025 and gave the Sellers (Allison and the Allison Trust) an express unilateral right to terminate if the transaction failed to close by that date. (First Amendment §§ 2.01, 2.03(b)). Closing documents such as stock certificates and stock powers were executed and placed in escrow with closing counsel Kevin Kilduff. (Doc. 60 at ¶ 43). Hall did not deposit the Purchase Price by the September 29, 2025 deadline in immediately available funds, if at all. (*Id.* ¶¶ 45–63). Plaintiffs therefore terminated the Stock Purchase Agreement. (*Id.* ¶ 56).

On March 23, 2026, Defendant Hall filed his original Counterclaims (Doc. 34) and on April 8, 2026, he filed his First Amended Counterclaims. (Doc. 58). Plaintiffs subsequently filed their

First Amended Complaint (Doc. 60), however, Hall's Answer to Plaintiff's First Amended Complaint simply reasserts the Counterclaims in Hall's First Amended Answer and Counterclaims. (*See* Doc. 66). Hall counterclaim alleges he owns XP Services because he deposited $20 million into an account he claims is the closing attorney's IOLTA account at Charter One Bank in South Sudan. (Countercl. ¶ 4). Otherwise, his factual allegations in Paragraphs 1-16 contain no allegations of wrongdoing by Plaintiffs except for an alleged breach of the SPA.

## LEGAL STANDARD

A motion to dismiss for lack of standing is properly characterized as a motion to dismiss for lack of subject-matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1). *Novo Nordisk, Inc. v. DCA Pharmacy*, 745 F. Supp. 3d 626 (M.D. Tenn. 2024) (citing *Stalley v. Methodist Healthcare*, 517 F.3d 911, 916 (6th Cir. 2008)). "Where a defendant challenges a plaintiff's standing to bring suit, the Court should first consider whether it has subject matter jurisdiction pursuant to Rule 12(b)(1) before it considers the substantive merits of a pleading pursuant to Rule 12(b)(6)." *Id*. (quoting *Diversicare v. Glisson*, 2017 WL 4873510, at *4 (E.D. Ky. Oct. 27, 2017) (citing *Bell v. Hood*, 327 U.S. 678, 682, 66 S.Ct. 773, 90 L.Ed. 939 (1946)).

A court considering a Rule 12(b)(1) motion that attacks the underlying factual basis must weigh the evidence to determine whether it can hear the case, without presuming challenged factual allegations to be true. *DLX, Inc. v. Kentucky*, 381 F.3d 511, 516 (6th Cir. 2004). Failure to establish standing requires dismissal. *Loren v. Blue Cross & Blue Shield of Mich.*, 505 F.3d 598, 607 (6th Cir. 2007).

On a Rule 12(b)(6) motion, the Court considers not whether the plaintiff will ultimately prevail, but whether the facts permit the court to infer "more than the mere possibility of misconduct." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). For purposes of this determination, the

Court construes the complaint in the light most favorable to the plaintiff and assumes the truth of all well-pleaded factual allegations in the complaint. *Thurman v. Pfizer, Inc.*, 484 F.3d 855, 859 (6th Cir. 2007). However, this assumption does not extend to the bare assertions of legal conclusions. *Iqbal*, 556 U.S. at 679. Nor is the Court "bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986). The factual matter must "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Plausibility "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.' " *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

Rule 9(b) requires that "[i]n alleging fraud . . . , a party must state with particularity the circumstances constituting fraud . . . ." A plaintiff must "allege the time, place, and content of the alleged misrepresentation on which he or she relied; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud." *U.S. ex rel. Bledsoe v. Cmty. Health Sys., Inc.*, 501 F.3d 493, 504 (6th Cir. 2007) (citation omitted); *see also Mitchell v. Owens*, No. 12-2859, 2013 WL 2422629, at \*8 (W.D. Tenn. June 3, 2013) (dismissing RICO claims under Rule 9(b) where the plaintiff "fail[ed] to identify any false statement allegedly made by any defendant nor much less the time and date of any false representation," but "merely cite[d] the elements of a cause of action for fraud and include[d] no factual allegations").

<u>ARGUMENT</u>

**I.      Hall lacks standing to assert Count IV**

A court lacks subject matter jurisdiction unless the plaintiff has standing to sue. *Davis v. FEC*, 554 U.S. 724, 734 (2003). At the pleading stage, Article III standing requires allegations

showing (1) an injury in fact, (2) fairly traceable to the defendant's conduct, and (3) likely redressable by a favorable judicial decision. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)); *see also Soehnlen v. Fleet Owners Ins. Fund*, 844 F.3d 576, 581 (6th Cir. 2016).

The alleged injury must be personal and individualized; it cannot derive solely from harm to a third party, including a corporation. *Firestone v. Galbreath*, 976 F.2d 279, 285 (6th Cir. 1992); *see also Franchise Tax Bd. of Cal. v. Alcan Aluminum Ltd.*, 493 U.S. 331, 336 (1990) (describing the shareholder-standing rule, which generally bars shareholders from enforcing corporate rights).

Under Tennessee law, a corporation is a legal entity distinct from its shareholders, with its own rights and liabilities. *Cambio Health Solutions, LLC*, 213 S.W.3d 790 (Tenn. 2006); *see also* Tenn. Code Ann. § 48–13–102(1). Because the corporation alone owns its causes of action, "the proper party to bring a claim on behalf of a corporation is the corporation itself acting through its directors or a majority of its shareholders." *House v. Estate of Edmondson*, 245 S.W.3d 372, 381 (Tenn. 2008) (quoting *Daily Income Fund, Inc. v. Fox*, 464 U.S. 523, 531–32 (1984)). A shareholder has no individual right of action for injury to the corporation because any such injury is incidental and affects all shareholders alike. *Keller v. Est. of McRedmond*, 495 S.W.3d 852, 867 (Tenn. 2016).

When a corporation declines to pursue its own claims, shareholders may proceed only through a derivative action brought on the corporation's behalf. *Id.*; *see House*, 245 S.W.3d at 381–82. By contrast, a direct action exists only where the shareholder suffers a distinct injury independent of any harm to the corporation—such as loss of voting rights, denial of access to corporate records, wrongful inducement to sell stock, or direct fraud. *Keller*, 495 S.W.3d at 869.

5

Claims alleging mismanagement, self-dealing, waste, or interference with corporate contracts are paradigmatically derivative because any harm is to the corporation itself. *Id.*

Count IV of Hall's Counterclaim alleges that Allison breached fiduciary duties while serving as CEO of XP Services by negotiating with Calidus, executing a competing transaction, initiating this lawsuit, and communicating with third parties regarding ownership. (Doc. 58 at ¶¶ 32–36). These allegations describe classic corporate injuries, not individualized harm. Under Tennessee law, claims for officer mismanagement or self-dealing are derivative as a matter of law because the corporation bears the primary injury. *See Keller*, 495 S.W.3d at 869. Even if Hall were a shareholder of XP Services—which he is not—this claim would still be derivative.

A plaintiff who attempts to pursue a derivative claim as a direct action lacks standing, and dismissal is required. *Id.* A derivative claim belongs exclusively to the entity, and an owner may bring it only on the entity's behalf. *Id.* (citing Daniel S. Kleinberger, Direct Versus Derivative and the Law of Limited Liability Companies, 58 Baylor L. Rev. 63, 71 (2006)). Tennessee courts determine the nature of a claim by asking who suffered the alleged harm and who would receive the benefit of any recovery. *Keller*, 495 S.W.3d at 880 (citing *Tooley v. Donaldson, Lufkin, & Jenrette, Inc.*, 845 A.2d 1031, 1035–39 (Del. 2004)).

Here, any claim arising from an alleged breach of fiduciary duty by Allison belongs to XP Services and must be brought by the company itself or, if appropriate, derivatively by a shareholder. Hall does not allege any personal injury separate from harm to the corporation. (Doc. 58 at ¶¶ 32–36). Instead, he challenges decisions concerning XP Services' operations, banking relationships, and prospective contracts with Calidus—quintessential corporate interests. (*Id.*). Any alleged injury to Hall flows solely from his claimed status as a shareholder, a status he never

attained because the Stock Purchase Agreement never closed. (Doc. 1 ¶¶ 4, 42). Such claims are derivative as a matter of law. *See Keller*, 495 S.W.3d at 880.

Allowing it to proceed would undermine the separate legal existence of the corporation, circumvent the procedural safeguards governing derivative actions, and risk double recovery or inconsistent judgments—outcomes Tennessee law has long rejected. *Cambio Health Solutions*, LLC, 213 S.W.3d at 790. Count IV therefore must be dismissed under Federal Rule of Civil Procedure 12(b)(1).

**II.**      **Counts III-VII of Hall's Counterclaim must be dismissed under Federal Rule of Civil Procedure 12(b)(6) because they fail to state a claim upon which relief can be granted.**

     *a. Hall's breach-of-fiduciary-duty claim (Count IV) must be dismissed.*

Even if the Court were to construe Count IV of Hall's Counterclaim as an attempt to plead a derivative action on behalf of XP Services, it still must be dismissed. Federal Rule of Civil Procedure 23.1(b) and Tennessee Code Annotated § 48-17-401(b) impose strict, particularized pleading requirements precisely to ensure that derivative claims are brought only when the corporation itself will not or cannot act.

Shareholder derivative actions are subject to the more demanding pleading standard of Rule 23.1(b), which requires that the complaint:

> (1) allege that the plaintiff was a shareholder or member at the time of the transaction complained of, or that the plaintiff's share or membership later devolved on it by operation of law;
>
> (2) allege that the action is not a collusive one to confer jurisdiction that the court would otherwise lack; and
>
> (3) state with particularity:
>
>      (A) any effort by the plaintiff to obtain the desired action from the directors or comparable authority and, if necessary, from the shareholders or members; and
>
>      (B) the reasons for not obtaining the action or not making the effort.

7

Fed. R. Civ. P. 23.1; *see McCall v. Scott*, 239 F.3d 808, 815 (6th Cir. 2001).

Tennessee's requirements for bringing a stockholder derivative suit involving a for-profit corporation are set out in Tenn. Code Ann. § 48-17-401. The statute states that a "person may not commence a proceeding in the right of a domestic or foreign corporation unless the person was a shareholder of the corporation when the transaction complained of occurred or unless the person became a shareholder through transfer by operation of law from one who was a shareholder at that time." Tenn. Code Ann. § 48-17-401(a). The statute also addresses the need for the plaintiff to make a pre-suit litigation demand on the corporation's board stating:

> A complaint in a proceeding brought in the right of a corporation must be verified and allege with particularity the demand made, if any, to obtain action by the board of directors and either that the demand was refused or ignored or why the person did not make the demand…

Tenn. Code Ann. § 48-17-401(b). If a party has not met these requirements its case must be dismissed. *See McCarthy v. Middle Tennessee Elec. Membership Corp.*, 466 F.3d 399 (6th Cir. 2006); *See also Memphis Health Ctr., Inc. ex rel. Davis v. Grant*, No. W2004-02898-COA-R3CV, 2006 WL 2088407, at \*10 (Tenn. Ct. App. July 28, 2006)( A complaint for a derivative action must "allege with particularity the demand made, if any, to obtain action by the directors ... or why [the plaintiffs] did not make the demand." (citing *Lewis ex rel. Citizens Sav. Bank & Tr. Co. v. Boyd*, 838 S.W.2d 215, 221 (Tenn. Ct. App. 1992)).

Here, Count IV does not meet the strict pleading requirements to bring a derivative action and must be dismissed. First, to bring a claim derivatively, the pleader must "state with particularity" either (A) the effort made to obtain action from the corporation; or (B) the reasons why such a demand would have been futile. Fed. R. Civ. P. 23.1(b)(3); Tenn. Code Ann. § 48-17-401(b). Hall alleges neither. His pleading is silent on any pre-suit demand to XP Services' board or to Allison. (*See generally* Doc. 58). Nor does the Counterclaim offer particularized facts

8

demonstrating futility. (*Id.*). These omissions are not technical oversights; they are substantive failures that require dismissal. *See McCarthy*, 466 F.3d at 406–7; *Memphis Health Ctr., Inc. ex rel. Davis*, 2006 WL 2088407, at \*10.

Second, a derivative complaint must be verified. Tenn. Code Ann. § 48-17-401(b); Fed. R. Civ. P. 23.1(b). Hall's Counterclaim IV is not verified. (*See generally* Doc. 58). Because Hall's Counterclaim is not verified nor does it satisfy the pre-suit demand requirement, Count IV must be dismissed in its entirety under Rule 12(b)(6).[2]

### b. Hall's tortious interference claim (Count III) fails to state a claim

In 2002, the Tennessee Supreme Court in *Trau–Med of Am., Inc. v. Allstate Ins. Co.*, recognized the tort of interference with business relationships. 71 S.W.3d 691 (Tenn. 2002). To state a claim for this tort a party must allege the following; (1) an existing business relationship with specific third parties or a prospective relationship with an identifiable class of third persons; (2) the defendant's knowledge of that relationship and not a mere awareness of the plaintiff's business dealings with others in general; (3) the defendant's intent to cause the breach or termination of the business relationship; (4) the defendant's improper motive or improper means; and (5) damages resulting from the tortious interference. *Id.* at 701.

Here, Hall has not properly alleged elements (3) or (4).

The Court in *Freeman Mgmt. Corp. v. Shurgard Storage Centers, LLC*, explained the fundamental difference between tortious interference with prospective business relationship and inducement of breach of contract stating:

> The most significant difference between this tort and that of inducement of breach of contract is the type of motive or means required. As discussed above, liability for inducement of breach of contract may be imposed if the inducer's motive was

---

[2] Count IV also purports to allege a claim for breach of fiduciary duty against Stewart. (Countercl. ¶ 35). Stewart is not a party to this lawsuit and therefore there are no claims against Stewart to move to dismiss.

simply to benefit himself, with the indirect effect of damaging the plaintiff. Consequently, business competition is no defense to a claim for inducement of breach of an existing contract. Conversely, in the tortious-interference context, business competition may be a defense, as the Tennessee Supreme Court has long held that, in the absence of an actual contract, a competitor is privileged to attempt to advance its own business interests at the expense of a competitor's, so long as the method of such competition is not improper. Thus, to show an improper motive in the tortious-interference context, the *Trau–Med* court stated that the *plaintiff must demonstrate that the defendant's predominant purpose was to injure the plaintiff.*

461 F. Supp. 2d 629, 640 (M.D. Tenn. 2006) (internal quotation marks and citations omitted) (emphasis added). The Court continued stating that under *Trau-Med* improper motive can also be shown through specific acts such as:

acts that are illegal or independently tortious, such as violations of statutes, regulations, or recognized common-law rules; violence, threats or intimidation, bribery, unfounded litigation, fraud, misrepresentation or deceit, defamation, duress, undue influence, misuse of inside or confidential information, or breach of a fiduciary relationship; and those methods that violate an established standard of a trade or profession, or otherwise involve unethical conduct, such as sharp dealing, overreaching, or unfair competition.

*Id.* (citing *Trau–Med*, 71 S.W.3d at 701 n. 5).

Allegations of mere "malice" are not sufficient to state a claim for tortious interference; rather, to satisfy the "improper motive" element for a tortious-interference claim, as indicated above, harm to the plaintiff must be the defendant's "predominant motivation." *Trau–Med*, 71 S.W.3d at 701 n. 5. If the complaint does not allege that the opposing party engaged in wrongful means of the type required to give rise to a tortious interference claim or that its primary purpose for engaging in the activities that are the subject of the complaint was to harm Plaintiffs, the complaint must be dismissed. *Freeman Mgmt. Corp.*, 461 F. Supp. 2d at 642.

Count III of Hall's Counterclaim does not meet this standard. Count III offers only blanket assertions of entitlement to relief without any factual allegation or support. (Doc. 58 at ¶¶ 26–31). Nowhere does Hall plead concrete particulars—dates, documents, statements, or circumstances—that would allow the Court to infer intent to terminate a specific third-party relationship rather than

ordinary business actions based on Allison's well-founded belief that he owns XP Services. Elements (3) is not plausibly pled.

Likewise, the Counterclaim is completely void of any allegation satisfying the fourth element: improper motive or improper means. Hall simply alleges Allison's conduct "accomplished through improper means (breach of contract, fraud, and breach of fiduciary duty) and with improper motive (self-enrichment at Hall's expense)." (Doc. 58 at ¶ 30). These are precisely the kind of blanket assertion legal conclusions that *Twombly/Iqbal* hold insufficient. First, self-enrichment is not an improper motive in the prospective-interference context; Tennessee law expressly privileges competitors to advance their own interests so long as the methods are not independently wrongful. *Freeman Mgmt. Corp.*, 461 F. Supp. 2d at 640. Hall merely recycles the very contract claim at issue in this litigation—circular allegations cannot serve as independent support for a separate tort.

Furthermore, Hall pleads no facts showing that Allison's "predominant purpose" was to injure him, as *Trau-Med* requires. (Doc. 58 at ¶¶ 26–31). He identifies no violence, threats, bribery, defamation, or any other independently tortious act from the *Trau-Med* list that is properly pled. (*Id.*).

In short, Hall's claim for tortious interference supplies no factual content that "raise[s] a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Therefore, this claim must be dismissed under Rule 12(b)(6).

        *c.   Count V (Fraud) fails to satisfy Rule 9(b) and fails under 12(b)(6)*

Hall's claim for fraud also fails. First, it is nothing but a repackaged breach of contract claim. Hall alleges that Plaintiffs committed "fraud" by breaching § 5.03 or 3.18 of the SPA, by trying to get out of the SPA, and by claiming ownership of XP Services for Hall's failure to close.

(Countercl. ¶¶ 38-39). These allegations, even if true, allege nothing but that Plaintiffs breached the SPA and that Plaintiffs dispute Hall's claim of ownership. This is not fraud. *See Commc'ns Unlimited Contracting Servs., Inc. v. Comdata, Inc.*, 611 F. Supp. 3d 483, 496 (M.D. Tenn. 2020) (alleged fraud by breaching a provision of an agreement is not actionable); *EPAC Techs., Inc. v. Thomas Nelson, Inc.*, 438 F. Supp. 3d 847, 853 (M.D. Tenn. 2018), *aff'd sub nom. EPAC Techs., Inc. v. HarperCollins Christian Publ'g, Inc.*, 810 F. App'x 389 (6th Cir. 2020) (same under New York law); *Town of Smyrna, Tenn. v. Mun. Gas Auth. of Georgia*, 129 F. Supp. 3d 589, 605 (M.D. Tenn. 2015) (fraud claim cannot be predicated upon breach of contract unless a party breaches a duty owed independent of the contract); *Calipari v. Powertel, Inc.*, 231 F. Supp. 2d 734, 736 (W.D. Tenn. 2002).

Hall's fraud and fraudulent concealment claim is nothing more than a repackaged breach-of-contract claim and must be dismissed. Every alleged misrepresentation or omission Hall identifies flows directly from duties created by the Stock Purchase Agreement and First Amendment. Specifically, Hall complains of (1) supposed breaches of the SPA's non-circumvention, exclusivity, and prohibited-action provisions (§§ 5.02–5.04) by negotiating with Calidus and executing the GAL MOU; (2) alleged violations of the contractual representations and warranties in Section 3.18 regarding legal compliance; and (3) post-closing conduct in which Allison and Stewart purportedly sought to "get out" of the transaction and disputed Hall's claimed ownership. These are precisely the subjects of Hall's own breach-of-contract counterclaim (Countercl. ¶ 24). Under Tennessee law, a party may not transform a breach of contract into a tort claim for fraud absent an independent duty outside the contract. *See Commc'ns Unlimited Contracting Servs., Inc.*, 611 F. Supp. 3d at 496. Because Hall identifies no such extracontractual duty, Count V is duplicative and fails as a matter of law.

Second, Hall has failed to allege any duty to disclose, warranting dismissal of any fraudulent concealment claim. Fraudulent concealment can only exist when there is a duty to disclose. *Shah v. Racetrac Petroleum Co.*, 338 F.3d 557, 571 (6th Cir. 2003). A duty to disclose does not exist with no fiduciary or confidential relationship in an arm's length transaction. *EPAC Techs., Inc. v. HarperCollins Christian Publ'g, Inc.*, 398 F. Supp. 3d 258, 269 (M.D. Tenn. 2019), *aff'd on other grounds*, 810 F. App'x 389 (6th Cir. 2020). There is no duty to disclose here under Tennessee law, nor has Hall alleged one.

Third, if this court where to construe Hall's claim for fraud as a claim for promissory fraud it still fails. Under Tennessee law promissory fraud occurs when there is a misrepresentation regarding a promise of future action. *Shah*, 338 F.3d at 557. To properly state a claim for promissory fraud "a plaintiff must demonstrate that 'a promise or representation was made with the intent not to perform.' " *Id.* (citing *Fowler v. Happy Goodman Family*, 575 S.W.2d 496, 499 (Tenn.1978)). Meaning that the "plaintiff must prove that the defendants had no intention to honor the promise at the time it was made." *Kelly v. Int'l Cap. Res., Inc.*, 231 F.R.D. 502 (M.D. Tenn. 2005).

Here, Hall's fraud allegations cannot support a claim for promissory fraud because he has not alleged an intent to dishonor the promise at the time it was made. All the alleged misrepresentation or concealment Hall identifies occurred begin in December of 2025. (Countercl. ¶ 38). This is months after both the Stock Purchase Agreement, executed February 13, 2025, and the First Amendment, executed September 6, 2025, were signed. (Countercl. ¶¶ 8–13, 38–39). Hall does not allege that Allison or the Allison Trust lacked the intention to perform any promise or representation contained in those agreements at the time they were made. Instead, Hall complains only of later conduct. (Countercl. ¶ 38–39). Because Hall has failed to, and cannot, plead that

Plaintiffs harbored a contemporaneous intent not to honor the SPA or First Amendment when those contracts were executed, any promissory-fraud theory fails as a matter of law.

### d. Hall's claim for Civil Conspiracy (Count VI) fails

Hall's claim for conspiracy likewise fails both because he does not allege any underlying tort committed. "[C]ivil conspiracy requires an underlying predicate tort allegedly committed pursuant to the conspiracy." *Freeman Mgmt. Corp. v. Shurgard Storage Centers, LLC*, 461 F. Supp. 2d 629, 642 (M.D. Tenn. 2006); s*ee also Levy v. Franks*, 159 S.W.3d 66, 82 (Tenn. Ct. App. 2004); *Watson's Carpet & Floor Coverings, Inc. v. McCormick*, 247 S.W.3d 169, 180 (Tenn. Ct. App. 2007). An underlying breach of contract claim does not suffice, and a party cannot conspire to breach its own contract. *Stone Door Grp., LLC v. Meade*, No. 1:19-CV-271-TAV-CHS, 2021 WL 6496753, at *14 (E.D. Tenn. July 9, 2021). Conspiracy claims must be pled with some degree of specificity, and vague and conclusory allegations do not suffice. *McGee v. Best*, 106 S.W.3d 48, 64 (Tenn. Ct. App. 2002).

Here, Hall's conspiracy claim rests on the same conduct he alleges in his other counterclaims. (Countercl. ¶¶ 43–47). Because each of those underlying claims fails to state an actionable tort for the reasons set forth above, Hall's civil conspiracy claim necessarily fails as well. The alleged actions do not constitute independent unlawful means or an unlawful purpose outside the parties' contractual relationship.

Further, under Tennessee, law, civil conspiracy is not a standalone tort, it qualifies only to hold one conspirator liable for the actions of others. *Acad. of Allergy & Asthma in Primary Care v. Amerigroup Tennessee, Inc.*, 155 F.4th 795, 828 (6th Cir. 2025). The only alleged overt act against Allison (the party to this lawsuit) in alleged furtherance of the conspiracy is breach of the SPA by allegedly negotiating with Calidus. (Countercl. ¶ 45(d)). Allison cannot be liable for

14
Case 3:26-cv-00072-KAC-DCP    Document 74    Filed 04/22/26    Page 14 of 18
PageID #: 1355

allegedly conspiring to cause himself to breach the SPA. The other alleged acts – Troy Allison's meeting where he "learned the full scope and value of the Calidus pipeline," Stewart's alleged call to Kilduff asking for "a way to get out" of the SPA, issuance of a default letter, filing a lawsuit, or Alghrairi's alleged false declaration, are not independently tortious or pled as such. (Countercl. ¶ 45 (a), (b), (c), (e), (f)). If Allison is liable for breach of the SPA, that claim is already pled, and the conspiracy claim adds no value. *See Freeman Mgmt. Corp. v. Shurgard Storage Centers, LLC*, 461 F. Supp. 2d 629, 643 (M.D. Tenn. 2006) (noting the conspiracy claim was "completely without substance" and the party "will either be liable for breach of contract or not.").

   e. *Hall's conversion claim (Count VII) fails*

Under Tennessee law, conversion requires (1) the appropriation of another's property to one's own use and benefit, (2) by the exercise of dominion over it, (3) in defiance of the true owner's rights. *Paehler v. Union Planters Nat'l Bank*, 971 S.W.2d 393, 398 (Tenn. Ct. App. 1997). Tennessee does not recognize a cause of action for misappropriation or conversion of intangible property rights. *See Fam. Tr. Servs. LLC v. Green Wise Homes LLC*, 693 S.W.3d 284 (Tenn. 2024) (collecting cases). Additionally, when a conversion claim is simply a re-casting of a breach of contract claim, conversion cannot stand. *See Comm. Unlimited Contracting Services, Inc.*, 2020 WL 606592, at *10 (M.D. Tenn. Feb. 7, 2020); *Hughes v. Gupta*, No. 220CV02200JTFATC, 2022 WL 18141469 (W.D. Tenn. Oct. 7, 2022).

Hall's claim for conversion alleges that Allison has exercised dominion and control over XP Services which amounts to conversion. (Doc. 58 at ¶ 50). This claim fails as a matter of law for two independent reasons. First, Hall does not allege the appropriation of any specific, tangible property. Tennessee law defines tangible personal property as follows:

> "Tangible personal property" means and includes personal property that may be seen, weighed, measured, felt or touched, or is in any other manner perceptible to

the senses. "Tangible personal property" does not include stocks, bonds, notes, insurance or other obligations or securities, . . .

Tenn. Code Ann. § 67-4-702(23). In contrast, the term intangible personal property is defined as:

"Intangible personal property" includes personal property, such as money, any evidence of debt owed to a taxpayer, any evidence of ownership in a corporation or other business organization having multiple owners, and all other forms of property, the value of which is expressed in terms of what the property represents rather than its own intrinsic worth.

Tenn. Code Ann. § 67-5-501(5). Under these definitions ownership interest in a corporation is not tangible property. Because Tennessee courts have consistently held that causes of action for conversion of intangible rights, including corporate stock or ownership interests, do not exist under state law, Hall's claim must be dismissed. *See Bridgeforth v. Jones*, No. M2013-01500-COA-R3CV, 2015 WL 336376, at *12 fn. 8 (Tenn. Ct. App. Jan. 26, 2015) (stock options were intangible property); *Omnicon, Inc. v. King*, 688 S.W.2d 818, 820 (Tenn. 1985) (partners interest in partnership was intangible property).

Second, Hall's conversion claim is also merely a repackaging of his breach-of-contract claim regarding ownership of XP Services. (Doc. 58 at ¶¶ 49–52.) He alleges that Allison's continued operation of the company, receipt of compensation, and entry into contracts constitute conversion because Hall supposedly became the owner on September 29, 2025. (*Id.*). Courts dismiss conversion claims that are duplicative of breach-of-contract claims. *See Comm. Unlimited Contracting Services, Inc.*, 2020 WL 606592, at *10; *Hughes*, 2022 WL 18141469 at ** 4-5.

<u>**CONCLUSION**</u>

For the foregoing reasons, Plaintiffs respectfully request that this Court dismiss Counts III-VII of Defendant John Phillip Hall II's First Amended Counterclaim with prejudice.

Dated: April 22, 2026

Respectfully submitted,

**NELSON MULLINS RILEY**
**& SCARBOROUGH LLP**


*/s/ Carson W. King*
Carson W. King (BPRN 034305)
Nelson Mullins Riley & Scarborough LLP
1222 Demonbreun Street, Suite 1700
Nashville, TN  37203
Phone: (615) 664-5388
Fax: (615) 664-5399
Email: carson.king@nelsonmullins.com

*Attorney for Plaintiffs*

17

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Memorandum in Support of

Partial Motion to Dismiss First Amended Counterclaim is being served via email and/or U.S. mail

upon the below as follows.

John Phillip Hall II
jhall@tricion.com

Tricion, Inc
jhall@tricion.com
P.O. Box 125
Berryville, VA 22611

11921 Freedom Drive, Suite 550
Reston, Virginia 20190


Dated: April 22, 2026                     */s/ Carson W. King*
                                          Carson W. King